Good morning, be seated. We are here for the in-bank argument in Ceron v. Holder. Judge Gould is participating by video. Good morning, Judge Gould. How are you? Yes, good morning, Chief Judge Kozetsky. You're coming through loud and clear. Are you able to hear me? I can hear you perfectly, and I can see all of you and the distinguished lawyers as well. Okay. In that case, we're ready to proceed. Petitioner. Buenos días and good morning. Mario Acosta, Jr. May it please the Court, Mario Acosta, Jr., appearing on behalf of the petitioner in this case, Mr. Ruben Ceron. With the Court's permission, I'd like to reserve five minutes of my argument time for a rebuttal. Mr. Ceron is not present in the Court today. He actually is with his family in the State of Georgia, and unfortunately, he did not have the financial means to travel here to San Francisco for the oral argument, but he is watching the live stream video of this. Your Honors, the categorical approach essentially requires that this Court look at two different sets of elements for two different statutes. The first elements that have to be looked at is for the generic definition of the definition of the elements of the generic offense, which in this case would be the elements of a crime involving moral turpitude. Once the Court has determined what those elements of the generic offense are, the second inquiry then is to review de novo. Is it a crime of moral turpitude, or is it a statute? Well, our argument would be that it's not a crime involving moral turpitude because then that's this. When I'm asking you, what are the elements of a crime of moral turpitude? Well, in the context of the assault statutes, which is in the oral – Assault is a crime. Correct, Your Honor. It's defined. Correct. Where is crime of moral turpitude defined by statute? Generally, it's considered to be a crime that has as an element evil intent, the type of intent that would shock the conscience. It's a category of crime. It's a term applied to another crime that is not a crime in itself. Is that correct? Correct. So in essence, once you've identified what the elements of the crime – But this wasn't a simple assault, right? Correct, Your Honor. There was a gang enhancement. Correct, Your Honor. But if you consider – No, but I mean, that's a fact, right? It is a fact. But as DeKalb and Moncrief have made clear, this Court can't look at facts. We have to look at what the elements are of the statute and – It's not just – no, no. I'm sorry. I'm sorry, Your Honor. What is a fact is that this was your client – your client pled guilty or normal contender not to a simple assault, but to assault with a gang enhancement, right? Correct, Your Honor. And the gang enhancement – And the gang enhancement then becomes the element of a new crime. Thank you. A new – now I can see you. There we go. There you are. Okay. The enhancement becomes – the crime plus enhancement becomes a new crime. Correct. It's not a simple assault. It's a simple assault done in pursuance of a gang activity. Correct, Your Honor. But why isn't that new crime – why isn't the BIA view entitled deference that this new crime is a crime of moral turpitude? Well, I believe that there's no deference entitled with respect to the gang enhancement because it's particularly – the gang enhancement is relevant to a different statute. And as we have been told frequently, even by the Board in a matter of short, you cannot combine two different statutes to form one crime involving moral turpitude. That was essentially what this Court found in Marmolejo. That's why the Court in Marmolejo deferred to the Board's en banc decision that aggravated DUI was, in fact, a crime involving moral turpitude because knowledge that you shouldn't be driving was an element of the statute that the person was convicted of. And under the camps and under Moncrieff, it's clear that the Supreme Court is not interested in facts. I mean, that's why there's so much, I would say, criticism of the Aguilar-Montes case and that the camps' decision was that, I believe as Judge Berzon describes in her dissent, it was – the categorical approach was becoming a type of fact-finding categorical approach, which was – which essentially the problem here is that you're looking – you're supposed to look at the elements of the statute. And I say that because that's what the Supreme Court is telling us we're supposed to look at. Does it make any difference here that the notice to appear that was served on your client did not include the enhancements as part of the notice to appear? It only alleged 245A1. Correct, Your Honor. And that is something that we did raise in a 28-J letter and also in the supplemental brief, that pursuant to this Court's authority in Chowdhury, there's a requirement that the alien be given notice whenever a conviction or – or some type of enhancement is going to be used against the alien. You have to give the alien notice. You can't just bring that in. I don't disavow that there was a gang enhancement. Yes. I'm sorry. Yes, Your Honor. Yes. When you're talking about the elements, what are the elements of the crime of conviction? Can you at least state it? Sure. I think that probably the best guide for determining that – those elements is People v. Wright, the reason being that most – the most recent Supreme Court of California decision addressing the elements of the 245A statute is probably People v. Williams. Was that interpreting the 2006 statute, which was a version of the statute which was in effect when your client was convicted? No. But what my understanding is, once People v. Williams was decided, the jury instructions were then changed to fit what People v. Williams had held, which was essentially that it was a general intent crime that could be committed either with recklessness or what was described to be an objective, reasonable person standard. People v. Williams, in its decision, states that it was not finding that the crime involved negligence, and that is something that is highlighted in the Respondent Supplemental Brief, and I don't dispute that that's what People v. Williams says. But a year later in People v. Wright, the court of appeals there took the time to dissect Williams and essentially found that what Williams was determining was a negligence, at least that's what People v. Wright called it. The reason being that traditionally a negligence standard requires that the person be, that objectively looking at what the conduct was, that a reasonable person would have known that the intentional act would have probably and directly resulted in the harm, or better yet in an assault statute, the apprehension of the harm. But as So what, summarize for us quickly your position on that. Sure. So let's assume that Williams makes this a general intent statute. Correct. Does that mean that 245A1 is not a crime of moral turpitude? Correct. Why? Because the definition of a crime involving moral turpitude that has been adopted by this Court and by the Board requires that there be some form of evil intent. Assuming that's right. Yes. Move on to the gang enhancement. Are you aware that the BIA has actually dealt with whether the gang enhancement is a, makes something a crime of moral turpitude? I'm not aware of a published decision where the Board has. Were there any unpublished decisions on that point? Well, in our case, because if you look at the last paragraph, I believe the last paragraph of our decision in this case of the Board's unpublished decision, the Board seems to suggest that the admission that it was committed for the benefit of a street gang was a part of their analysis of the conduct. But my question is different. Yes, Your Honor. I'm aware of at least one unpublished decision by the Board, which I assume it would give Skidmore deference to. Correct. Which says that the addition of a gang enhancement to a crime that is not itself a crime involving moral turpitude doesn't turn it into one. Are you aware of that case? I am aware. I believe I came across it. I didn't cite it, but only because it's unpublished. Assuming that we give Skidmore deference to that unpublished decision, tell us why you think it's right. Well, I think it's right because it's following the logic of the Supreme Court. You're supposed to punish, you're supposed to, when the categorical approach, the purpose of the categorical approach is to compare elements. It's not to look at conduct. It's not about the facts of the case. Well, but let's assume that the gang enhancement becomes an element of this crime because your client pleaded to it, and I think Apprendi probably takes her stand. Tell me what it is about the gang enhancement. I don't know why it's the gang enhancement as if it were a crime itself. And it is because if you look at the first part of the gang enhancement statute, it says if you do this, it's a crime. Assuming your client admitted to assisting, et cetera, et cetera, why isn't that a crime of moral turpitude? And, well, I guess the answer to your question would be, Your Honor, that it was the admission that he committed this crime for the benefit of a street gang was in relation to penal code section 186.22, which is a gang enhancement. It's a sentence enhancement statute. And if you look at this Court's en banc decision from U.S. v. Corona-Sanchez, in that case, when looking at penal code section 666, which is also a sentence enhancement statute for petty theft with a prior and so forth, this Court held that a sentence enhancement statute is not a statute of conviction that can be used to form the basis. I assume you're wrong about that just for purposes of answering my question. Okay. Assume that this is an element of the offense. Okay. Does it turn it into a crime of moral turpitude because it's an element of the offense? What is required in order to violate or to get this enhancement? Right. Under California law? I mean, to be perfectly honest with you, Your Honor, the problem with answering your question is that generally when you determine if something involves moral turpitude, you look at prior published guidance, either from the Board or from this I agree that there are different types of assault statutes that both this Court and the Board have found that if there's an aggravating factor involved, such as a special relationship between the defendant and the victim, that that might rise to the level of involving moral turpitude, because then at that point, it's the type of conduct that I would agree shocks the conscience. Is it possible to find that committing an assault for the benefit of a street gang is the type of aggravating factor that might rise to the level of moral turpitude? I can't disagree with that. I think that that's a fair point to make. Well, but he's a categorical. That's what my question is. I guess I'm asking you what California law requires in order for this enhancement to be imposed. Does it require that the Court find conduct that is morally, morally turpitude in this? I have no idea. I have no idea how to describe it. Right. And I guess to answer your question, Judge Hurwitz, would be no, because if you take the statute for what it is, it's a sentence enhancement statute, meaning that there is no requirement that the finding be found beyond a reasonable doubt. There's no – it's not an element. It's an admission. Wait, wait, wait. You're frightening the question. I'm sorry. Under Apprendi and its progeny, and my understanding was that in California where the gang enhancement is applied outside the context of a life sentence, but as a true enhancement, that under Apprendi and its progeny, that would have to be proved beyond a reasonable doubt or, as in this case, pleaded to in order to apply it. Right. And it is a state-of-mind requirement that fills in the gap that you were pointing out, that, well, assault might be just a general intent crime, but the gang enhancement clearly is not. It requires a specific intent to help a gang. Correct. So... That's my question. I think we're both asking the same question. What does the statute require? Correct. When I read the California cases, they suggest that the gang enhancement can be applied if you assist a gang member in the commission of a crime, even if it's not the same crime for which you were convicted. So there is a specific intent statute, but does it require vile intent, if you will, or the kind of intent you think that moral turpitude requires? Or are you just not prepared to answer it? Right. No, no. I'm as prepared as possible. And I apologize if I'm having difficulty answering your question. I'm trying to formulate the best answer that addresses both the question and the other. And I understand your position that we should never get to it. Correct. But the paper and I are asking you to assume that it's part of the crime here. Sure. Well, I think that I guess I would make the argument that because the question It's not an argument question. It's a question about what State law calls for. Okay. If you don't know the answer, just say you don't know the answer, and we'll move on. Maybe we'll ask for a further briefing. But this is not a question of opinion. This is a question, as I understand the question, and two of your colleagues or two of my colleagues have asked you this question. Okay. And let me join in, you know, in saying I'm also interested in the answer to the question. What does California law require to convict somebody of this enhancement? Do you know the answer to this? Yes. It is. Okay. If you do know the answer, tell us what the answer is. I understand, Your Honor. The answer is that you have to show that the conduct was related to the conduct provided a benefit to that street gang. Now, the word benefit, my understanding is that it's pretty liberally construed. My reading of some of the cases that I looked at that had applied the sentence enhancement, I mean, talks about intimidation, talks about committing, for instance a Is there a case that answers that question in California? Not directly. There's only cases that provide examples where the sentence enhancement was found, but the conduct, for instance, involved stealing money, which I guess could provide a benefit to the gang, or committing a crime that So then you have the board looking at it and saying, yes, we think this makes it a crime of moral turpitude. Okay. Now, why isn't the board entitled to deference in its determination? It's sort of like saying if you commit an assault, it's one thing. If you commit an assault for the mafia, it's a different crime because you've got a criminal enterprise, and doing the same act to help a criminal enterprise is different from just hitting somebody over the head because you're on a bar fight. Okay. Why isn't the board entitled to deference when it says when you do something and you plead guilty to or are convicted of having done it to help a street gang, that becomes a crime of moral turpitude? Why isn't that the end of the matter? For I believe two reasons. One, as Judge Pius pointed out, there was no notice given that the department was intending to use it. Okay. The notice question is a formal question. I understand. Which we can get into, and we should. Okay. But let's get to the substance. Well, I think that to give you a fair answer. My question is why are they not entitled to deference? I understand. I don't believe deference is appropriate because essentially what the board is doing is it's combining two statutes to form one crime of moral turpitude, which is exactly what the board in matter of short said you cannot do. So essentially the board is going against what it's already held. And secondly, that's exactly one of the issues that this Court considered in Marmolejo. In Marmolejo, one of the arguments that was offered was in essence you're combining driving with a suspended license with a DUI, and neither one of these convictions standing alone would qualify as a moral turpitude offense. If I might stop you just a little. I understand what the board has said. And when the board talks about crime of just simple assault and simple battery, and then they go on and talk about we agree with the immigration as assault with a deadly weapon, particularly when coupled like a knife for the benefit, describes a greater mens rea, which seems to be the same kind of language that 186.22b1 would suggest or 1192.7c would suggest, but they don't cite to those statutes. They cite to cases. Those cases are people versus Colón Tuono, people versus Roca. Those cases don't have anything to do with those statutes. Correct. So what makes us have the idea that they necessarily used these statutes as a basis of their determination? Well, there is none, because in reality, as the Court pointed out, Colón Tuono and Roca essentially deal with the question of the general intent of the assault with a deadly weapon statute. There was nothing in either of those two cases where there was an admission or an enhancement or anything of that sort that would find that the Board would support. I was a little bit questioning your answers to some of these questions, given that when I read this, it seems to say the same kind of language, but when I read the cases they cite or what they're really talking about, it has nothing to do with these enhancement statutes. Correct. Correct, Your Honor, which is exactly why, to answer your question, Justice Kaczynski, I think that that also is relevant to the question of deference, because as Marmolejo points out, you can only defer to the Board's decision once the Board, once this Court reviewing de novo concludes that the Board got the elements of the statute correct. So let me separate it for you here and see if you agree with me. I take it what you're saying is that assault with a deadly weapon is not a categorical crime of moral turpitude. That is correct. Given the recent California Supreme Court decision is making clear that it only involves general intent. Correct, Your Honor. And when you get to this separate enhancement, I take it there's one or two things you may be saying, and I'm trying to figure out which is which. One is that even if it were a crime, it wouldn't be a crime of moral turpitude. Or second, it's not clear to you that the Board regarded it separately as one. Correct. Are you saying both of those things or one of them? I would agree with both. If I understand your question or your point, it's essentially that when you're trying to look at both of them, I guess the question becomes, can you consider the difference? See, we're all assuming you can consider both of them. I understand your argument that you can't. Right. But even if you can, I think what Judge Smith was saying, and I want to see if you agree with it, is that you can't tell from this decision whether or not they broke it out separately and said this would independently be a crime of moral turpitude or whether they sort of mushed them together. Correct. Because in order to give deference, you would have to show that the Board correctly analyzed the statute. So if the Board would have actually looked at the 186.22 statute and maybe found some authority for relying on it or trying to combine the two statutes, the 245 statute and the sentence enhancement, to find that the mens rea was more than just negligence or mere recklessness, then maybe I would agree that there's something that you can argue there. But, I mean, with all due respect, the Board's analysis here is – well, there is no analysis of the Board. I'm interested, though, in you fleshing out the issue that Judge Paes asked you about. Yes. The absence of notice. We know that your client pleaded to this enhancement because we have the plea colloquy. Correct. Tell me how – tell me why you don't think he got appropriate notice of it. Well, because pursuant to the regulations and Chalhuri, specifically Chalhuri v. INS, which is one of the cases that we cite to, you have to give the alien notice of all the charges that you're alleging so that the alien can properly defend himself. In this case – I'm sorry. He was confused? He thought it was a different client? I'm sorry, Your Honor? He was confused? He didn't know – he thought it was a different client? Yes, Your Honor, because the notice says a 245A conviction. It doesn't allege a 186.22 statute. Was that raised before the IJ or the BIA, this lack of pleading in the notice with your – Yes. I mean – I'm sorry. I don't think I understood your question, Your Honor. You said the notice didn't – the notice to appear didn't properly allege the enhancement. Correct. I'm asking you, did he raise that argument before the IJ? Yes, we did, Your Honor. It was something that was raised before the IJ and also in the BIA briefs that we submitted. We submitted several briefs, supplemental briefs with the BIA where we were requesting termination, and that was one of the arguments that we made. Can I ask you a somewhat different question? Yes, Judge Reiner. This is a sentencing enhancement for a mandatory sentence of three, four, five years. Correct. It seems to me from the record, and I must be missing something, that his sentence he actually received did not contain that enhancement. Correct. So at least the state court did not treat this as an enhancement where it was required to impose a mandatory sentence. Correct. As – if that's the case, appendix says you look to what actually happened rather than the form. If that's true, it would seem to follow that whatever he said, the state court did not treat this as a kind of an offense. And I would agree with that statement, Your Honor. There must be an answer to that, which maybe I should have asked your opponent. Right. But just reading the record, it seems that the state did not treat this as an enhancement. Correct. Well, I guess to answer your question, it seems to me that the admission was part of the plea agreement, and I agree. The admission could have given the trial court the discretion to impose a longer sentence. No, not discretion. It's a mandatory sentence in addition to the sentence he received. Correct. And the state did not give him that mandatory sentence? No, they did not, because as I – as Judge Reinhart, as you point out, I think the minimum is two or three years in prison. Here he did not receive a suspended sentence of a prison term. No, he got 364 days. Correct. For the basic crime. Correct. And then if it were a gang enhancement, the judge was required or the state was required to give him an additional two, three, or four years. Oh, no, in this case it was five years. I was going to say five years. He should go back and ask for more time. Maybe. But the state then did not treat this plea as a plea to the enhancement. And I agree. It seems to me from the record that the only consequence of the admission of the gang enhancement was that he was required to register as a gang member. The gang enhancement was not applied, despite whatever he said in his plea. So really, I want to follow up with Judge Reinhart's question, because I think they're pretty good, in that I couldn't find anywhere where the gang enhancement applied in the sentencing except as to what he was required to register as part of a gang. Correct. But on the other hand, I found some worry, even as a result to what you argue, in that the defendant accepted probation, right? Correct. And the probation, the imposition of the sentence was suspended. Right. And he was also given jail time and all of that was decreed as done. Correct. In my reading of this, this is the simple old wobbler, which says we're not saying this is a misdemeanor at all. We're saying it's still a felony. You've got 364 days of prison as a part of your probationary time. You've spent it. And now we're putting you on probation for the rest of the time, and you may spend more time. But no one said anything about five years, did they? No. There is nothing in the record. All right. I just wanted to clear that up. So under that reading of the record, you don't think that the gang enhancement he was actually convicted of the gang enhancement. Is that what you think it is? I would agree with that, and for two reasons. One, because the record kind of pointed to it. And you argued that to the FBI and the BIA?  Yes. But it was raised in the court. If I look at the briefs here and look to the IJ and the BIA, you argue that. I mean, you certainly don't argue the blue brief. Sure. And if you'd like, Your Honor, I can find a specific page while my colleague or while my respondent is talking. It's not the blue brief. Counsel, on page 257 of the record, the order that summarizes the plea that shows the violation of the assault with a deadly weapon, the status allegation, and the commission of the felony for the benefit of a street gang as being admitted and therefore found true. So I'm not sure how you can now say that that's – I understand that there may have been an error in the way that he was sentenced, if he was sentenced too leniently under what the statute required, but I don't understand your argument that this was not found true. Well, Judge Graber, it seems to me the argument isn't so much that it wasn't found to be true. I think the argument has more to do with he didn't receive a sentence, so to speak, so that the gang enhancement conviction was actually found. The only thing that's listed here is that he had to register as a gang offender. There's nothing that indicates that as a condition of that, he would also have to, you know, have a suspended sentence of five years in state prison. So what? I mean, that's a matter of the State authority and how they punish. There's no doubt that he was convicted. I mean, he has the – he has the register. The docket sheet shows it. I don't know how you can argue that. I think it's a suspended imposition sentence. That's all. Correct. And I think if it's – If it's violation, then they can sentence him accordingly. Judge Spratt used to be a State – a California State judge, so he knows more about what he's saying than we do. I wish we – I wish we always followed that view in our conscience. I agree with you. I agree with you. My worry is that – and I guess you need to help me and maybe Judge Pius can help me. Yes, Your Honor. When you read this, the plea for the assault with a deadly weapon is no contender. Right. The plea for these two enhancements are admissions only. There's no guilty plea. Right. There's an admission. Then we get to vandalism, over $400, he pleads not guilty. And then we go on down through. So I didn't know exactly what that meant, especially when we're arguing about a sentence which has nothing to do with the enhancements. Right. And, frankly, reading the record, they can impose any part of that sentence now. So I don't see how it couldn't be more than a year. He got his 364 days of part of probation, but they can impose any part of that thereafter they want. Isn't that correct? Correct. So with respect – and, I mean, just because I'd like to make this point, I understand the court's concern in possibly finding that a conviction for assault with a deadly weapon when there is evidence to show that there's a gang enhancement, to find that that's not categorically involving moral turpitude, because the admission is there. But I would only ask the Court to consider the guidance that's been provided by the Supreme Court. The Supreme Court has made it clear it's not interested in admissions. It's not interested in conduct. It's interested in elements. And the only statute of conviction that was raised by the government in this case is the 245A statute. So I think that – yes, Your Honor. You mentioned several times that we should follow the decisions as to what is a crime involving moral turpitude. Yes. You're aware that the BIA has determined that assault with a deadly weapon is a crime of moral turpitude in the case of GR in 1946 and again in Patasi in 1968. Has the BIA ever decided contrary to that? Not with specific reference to the 245A statute. Now, how about the Ninth Circuit? Don't we have a case in Gonzales v. Barber, 1953, flatly stating an assault with a deadly weapon is a crime of moral turpitude? Yes, we do. Shouldn't you follow those cases? I don't believe you should. Why? The answer would be because the mens rea, or better yet, the elements of the statute as they existed when GR was decided. But there is no statute of crime of moral turpitude. You have to go to the derivative. Correct. Oh, I understand. So looking at the statutory element of the statute. I understand, Your Honor. So. You're down to a less than a minute. I understand. Do you want to save your time? I would like to, Your Honor, if I may. I'll make it a full minute. I appreciate that, Justice Ginsburg. Thank you. Thank you. We'll hear from the litigious Mr. Holder. May it please the Court. Good morning, Your Honors. Brian Byer on behalf of the Attorney General's Respondent. Before I begin, I want to address the Court's questions about the sentencing enhancement. Judge Smith is exactly right, that the BIA did not consider the gang enhancement in deciding the moral turpitude issue or, indeed, any of the deportability issues. The BIA, and that's clear when you look at what the BIA did about the one year or more aspect of the deportability inquiry. The standard for the statute is convicted of a crime for which a sentence of a year or longer may be imposed. Given that enhancement, if the BIA had taken into account, it probably would have said something like, it's clear that a sentence of more than a year could have been imposed. So let me be clear, then. Your position is that we should not consider the gang enhancement in determining whether or not this was a crime of moral turpitude? Under admission. Categorically. Yes, Your Honor. Okay. Under administrative law. That makes the case a lot easier for us. So now the question is, why is violation of this California statute a crime of moral turpitude in light of the California decisions that came after the BIA decisions, saying that this doesn't require a specific intent? When I read the first decision in the law, the GR decision, the BIA says, we think this is a crime of moral turpitude, and now I'm quoting, because the crime constituting an attempt to do an injury necessarily includes the intent to do an injury. That's what the BIA said in GR. We now know that's not true under California law, given people versus Williams and other cases. You don't have to have a specific intent to do an injury. Given that, why should we defer to those previous decisions? Well, it's true, Your Honor, that you don't have to have a specific intent to do an injury. The general intent to do the act, the California Supreme Court cases have consistently said, is an intent to do a violent act that would cause an injury. Well, I guess I'm asking a different question. I think you're arguing that even the general intent would give you enough to have moral turpitude. My question is, why should we defer to the previous BIA cases which were premised on a notion that a specific intent was needed? Can't we approach this issue without deference now because the premise of the previous BIA cases was wrong? Well, Your Honor, respectfully, I disagree that the BIA's GR decision relied on specific intent. In fact, if you look at GR and the matter of O decision after that, the BIA, those decisions make clear that the benchmark for moral turpitude in these types of assaults is the use of a deadly weapon in a non-accidental manner. The BIA said in the matter of O that there's basically no practical difference between a crime where someone is using a deadly weapon and a crime where someone is acting with the intent to cause great bodily injury. Mr. Barnard, you agree that no bodily harm is required under the violent injury because you keep referring to violent injury, but violent injury as defined under California Penal Code Section 40 states it is not synonymous with bodily harm, but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act. So it seems like in some of the prior BIA decisions that did look at this, the intent requirement was a little higher than what we have here. It's curiously low for the California statute. And there's no — and the bodily harm is immaterial. Well, Your Honor, it's correct that it's a general matter under assault. There's no requirement of bodily injury. However, we're not talking about a simple assault. The BIA has said that — excuse me. The BIA has said consistently that simple assaults are not categorically turpitude. The BIA has also said that simple assault with some injury is not necessarily turpitude. The BIA has drawn the line regarding injury with — serious injury. What does it say about when it's coupled, an assault is coupled with a street gang enhancement? The BIA has not addressed that issue. Well, what about the last sentence of the ruling here? Well, Your Honor, the last sentence of the ruling is best read as addressing the argument that the crime should not be treated as a crime involving moral turpitude under a matter of Sejas and matter of Solon. If you look at the beginning of that paragraph that ends with that sentence, you'll see that's — the BIA teed up the issue by reciting what the Petitioner's position was. And the BIA here was distinguishing matter of Sejas and matter of Solon. We're talking about the sentence that says we agree with the immigration judge that assault with a deadly weapon, particularly when coupled with the admission of personal use of a deadly weapon at night for the benefit of a criminal street gang, describes a greater mens rea than mere recklessness. Correct. And that's in response to the point at the beginning of that paragraph. Well, whatever it's in response to, I mean, isn't that what you're saying? Isn't that the holding? No, Your Honor, it's not. When you look respectfully. It seems to me that all that matters is what the government's position is. And the government's position is that it's not relying on the enhancement to reach its decision. Is that right? That's absolutely correct, Your Honor. Counsel. Well, for those of us who don't think that the only thing that matters is what the government thinks. Or what the government weighed or what the government argued. Yeah, exactly. Well, for those of us who don't agree that that's the only thing that matters, why don't you finish answering Judge Sumner's question? Because I, for one, am interested in the answer. Well, Judge, when you read the paragraph, two paragraphs above the one we're now discussing, the BIA says it has long been settled in the Ninth Circuit that the offense of assault with a deadly weapon in violation of 245A1 is a crime involving moral turpitude, citing Gonzalez, citing matter of GR. And the BIA says we are not persuaded that Carr nullifies that rule. And in the earlier part of the decision reciting the facts, the BIA says the petitioner was convicted of assault with a deadly weapon in violation of 245A1. As my friend Mr. Acosta has pointed out, the NTA did not charge the gang enhancement and the gang enhancement does not really play any more than just a minor role in portability determination than simply addressing the argument that he made at the very end of the BIA decision. Counsel, in view of the fact that our precedents are murky and not, as was pointed out in the earlier opinions in this case, and in view of the fact that it's been quite a long time since the BIA has published on this issue, what would your position be with respect to whether we should remand this to the BIA for a published decision interpreting this California statute, or not interpreting the statute, determining whether it is still a crime involving moral turpitude in view of the developments in California law? Well, respectfully, Your Honor, it's true that the BIA has not addressed this California statute in a precedential decision since GR. But the Petitioner has not shown that the law has actually changed in a material way. In fact, as we pointed out in the supplemental brief, he did not even raise that issue to the Board. So the Board was entitled in reviewing the order of removal to consider whether Mr. — whether the submissions on behalf of Mr. Ceran regarding the contours of California law were correct or not. And the Board correctly concluded that they are not. I mean, the law has always been clear that assault is a general intent crime. The BIA decision in matter of GR doesn't reflect anything to the contrary on that front. It acknowledges that it's a general intent crime. And the further point about regarding general intent versus specific intent is, as the California Supreme Court has more recently observed, the categorization of the crime as general intent versus specific intent doesn't serve to adequately convey what the mens rea requirement is. Now, what's — Let me ask you. I'm sorry. What is your view of the elements? I asked this of Mr. Acosta, and I'm curious. I mean, especially in light of Williams, I don't know that any court has really examined the elements of each of these offenses, certainly not recently. And I'm curious what you think the elements are of assault with a deadly weapon, especially in light of Williams. Well, Your Honor, what's — I'll answer as best I can in just a moment. The critical question before this Court, though, is whether the BIA was correct in understanding the contours of California law. And what the BIA said about California law and 245A1 is that it does not include accidental shootings or accidental — unintentional or accidental conducts. And that's the core question. Did the BIA get that point right or wrong? Now, regarding the actual elements of the crime — Right, because to determine whether this is a categorical crime involving moral turpitude, we need to know the elements and see if, based on the elements, it fits within the generic definition of moral turpitude. Do you agree with that? Yes, Your Honor. So what do you think the elements are? Well, the elements are a willful act with a deadly weapon that is — that would cause an injury to another person. Could cause an injury. Well, it's more like would cause. I mean, the probability must be very high. So the nail file, which at least this Court has determined to be a possible deadly weapon, could be used with no bodily harm, and that would fit within the moral turpitude of being depraved? Your Honor, without more information about the particular facts, it's difficult to say. Well, we're not supposed to go into the facts. I mean, this isn't a modified categorical approach. I mean, for this to be a categorical crime, I think we just have to look at the elements. And then it also seems that we're directed to see if there's something that's broader that would fit the categorical crime, in this case moral turpitude, or that definition. And if it's broader, if there's something out there that's broader, then it doesn't quite fit. At least I think that's what the understanding is. Well, Your Honor, the BIA standard that it is using to judge whether an assault with a weapon crime is a crime involving moral turpitude is whether the weapon is deadly. And this means capable of inflicting death or bodily injury. A nail file certainly could be a deadly weapon. And if someone has been convicted for using a nail file, such as, for example, holding it to someone's throat, threatening to cut their throat with it, puncture their vein, or put an eye out, or other kinds of gas. But now you're focusing on facts. What I think what Judge McGee is asking you is that given the call for the statute and what its elements are, is it categorically true that somebody who violates that statute has committed a crime of moral turpitude? I understand it may be a crime of moral turpitude if somebody slits somebody's throat. The statute doesn't require that. The statute simply requires an intentional action that a reasonable person would inflict harm. So the question is why is that a crime of moral turpitude? Well, it's a crime involving moral turpitude because of the use of the deadly weapon. I mean, the California cases say that any object that is used in a manner and with a purpose of inflicting harm. But you don't need a purpose under California law. You just need the general intent, which is to say you acted intentionally and a reasonable person had apprehended it as posing harm to them. So the question is under California law, and I take it your position is the use of the weapon alone without regard to the intent is enough to make it a crime of moral turpitude. The non-accidental use of the weapon. Non-accidental use of a weapon makes any crime a crime of moral turpitude. Correct. And what Board decision says that? Well, the Board decision in Matter O says that. The Board decision, in fact, Matter O is probably the best decision to look at. I cited both in the supplemental brief. I cited both Matter O, a 1948 decision, and Matter Z, a 1940. What do you do when you run out of letters? Two decisions. You know, they use them all the time. Let me ask you another question. Yes. Here I am. I think I'm agreeing with you thus far in your argument. When I get to the point where we are right now, I'm sure you've read Judge Ikuda's dissent. Yes. How do you respond to that? It seems to me Navarro Lopez says right on bank, right on straight, assault with a deadly weapon is not a crime involving moral turpitude. I could care less what the Board says after we've got that. It's binding us. Are you asking us to change that? No, Your Honor. What's important? I didn't respond to that argument because that's very strong. The way the majority responded was, well, they relied on the wrong case there. But the bottom line is that's nonetheless the holding. Well, Your Honor, that may want me to undo that. Is that what you're arguing? No. As we laid out in the supplemental brief, because what the Navarro Lopez court said was not an unambiguous interpretation of the statutes that forecloses the agency's ability to construe it and reach a different result under national cable principles, notwithstanding what Navarro Lopez said, this Court has to accord Chevron deference to the BIA's view. Which case? Which precedential case would we defer to? For Chevron deference. We only give Chevron deference to precedential cases. Well, there's matter of GR.  A deadly weapon is a crime involving moral turpitude, most recently in a Horde Alejo Guzman, which I cited in the supplemental brief in 2011. When you look at Cejas and Salon, those which Petitioner has cited as superseding the BIA's precedent regarding deadly weapons, those cases to recognize deadly weapons. Is there any precedential case since Navarro Lopez? Yes, Your Honor. The BIA reiterated the point that assault with a deadly weapon is generally a crime involving moral turpitude in a Horde Alejo Guzman, 2011. And that was a precedential decision? That was a precedential decision. And that's dealing with California? No, it's not. If we look at a Horde Alejo Guzman, my worry about that particular case is that there's no analysis why the use of a deadly weapon necessarily involves the factors that we need. In order to provide the Chevron deference, it seems to me the BIA would have to explain why our cases in Morales and Upaul were not applicable. Well, Your Honor, regarding Morales and Upaul, neither of those cases concerned a deadly weapon. But the analysis in those cases is pretty strong about why, what we should do in these particular situations. I was on Upaul. And I frankly did not agree with Jennifer Zahn. But nonetheless, what she says now is law. Well, Your Honor, the BIA is entitled to Chevron deference when it acts in its law-giving function, whether or not it discusses or disagrees with a prior judicial precedent. The BIA didn't need to say we disagree with the ruling in Navarro-Lopez. What the BIA said in this case is that we don't think Navarro-Lopez decided the issue because the particular crime at issue there was accessory after the fact. Now, this Court's rules regarding precedent and what is dicta, what is binding, and what the precedential value of in-bank cases in particular is may call for the BIA to have done a different analysis. But nonetheless, the fact remains that under national cable, and as this Court has recognized itself, the agency's considered view when it's announcing through its law-giving function an interpretation of the statute that is reviewed under Chevron deference for the last 66 years. So your position, you think the Board's position is that any crime, any assault involving a deadly weapon is a commonwealth attitude. That's the bottom line. Any assault involving the non-accidental use of a deadly weapon. Any assault involving non-accidental use. You can have an accidental assault. I mean, you can see that. In some cases, law school, but I seem to remember that assault was if you stumble on somebody and knock them over, that's not an assault because you tipped over your feet. That's an accident. If you to have an assault, I think you have to have an intent of harming somebody. Correct. I might concede that. I don't know if it's, but assuming the elements of assault are met, if you use a deadly weapon and the deadly weapon, the use of a deadly weapon isn't, you intend to use a deadly weapon. It's not somehow accidentally falls into your hands or something. Then the Board's view is that that is a kind of moral turpitude. So getting past the question of deference, why ought we to defer to that? I mean, I assume we owe Chevron deference to, if that's the Board's position and we owe Chevron deference, why isn't that something we ought to sneer at? Oh, Your Honor, this Court should defer to that position. Why? Well, because the BIA has consistently held it for 66 years. Well, I understand, but nevertheless, why? Why is it reasonable? I mean, this could have been wrong for 66 years. Well. It just doesn't strike me that if the idea of moral turpitude is to have any meaning, that a pure crime of violence, again, this is not, you know, you've eliminated a gang enhancement, you're not doing it for the gang or anything else. You're hitting somebody over the head with a crowbar. That's a kind of moral turpitude. I'm not sure what becomes not a kind of moral turpitude. I mean, in a sense, of course, all crimes are morally wrong. You know, perhaps not including regulatory offenses. I'm not going to go into sort of strict liability offenses, but all common law crimes constitute conduct that is against the norms of society, and therefore I would suggest they're morally wrong. How do we distinguish any crime at all, any common law crime? How does every common law crime become a crime of moral turpitude, in that definition? Well, Your Honor, what the BIA has done is it's drawn a line between simple assaults and assaults where there's an injury to single out the more heinous forms of assault, the ones with particular aggravating factors. And among these factors. Well, it may have drawn that line, but it's not a logical line that runs along moral turpitudinous lines. I mean, you know, you could say one is more serious, but, you know, hitting somebody over the head with a crowbar and missing strikes me as no more or no less morally reprehensible than hitting over the head and making contact. I don't understand, you know, along the lines of which we're talking about, whether it's a crime of moral turpitude, whether somebody actually gets hurt strikes me as being a non- irrelevant offense. It strikes me as being an irrational distinction. Why don't we defer to that kind of irrationality? Your Honor, the BIA is not being irrational. The BIA has said that using a weapon or a device or instrument that is capable of causing great injury or death is not meaningfully different from actually committing an assault. But not if you miss. I'm sorry? Not if you miss. No, Your Honor. The fact that it's being used, that an attempt is being used, whether you hit someone or not, shows the willingness to commit a violent act, a particularly violent act, that is, under the BIA's parlance, you know, it shocks the conscience, according to the attorney general, as base and vile and depraved and contrary. Well, what doesn't shock the attorney general's conscience? You know, this whole debate is identical to the debate we had in the viral offense. What is something that's vile that shocks the attorney general's conscience? And what's just a regular crime? There's a whole debate. If we could debate it here, the vote was 8 to 3, that what was vile and what shocked the conscience was not the regular run-of-the-mill crime. And, you know, you may not like Navarro-Lopez, and you may not want to pay attention to it. The attorney general may want to reject it. But we ought to debate it. I mean, when you come down to it, as Navarro-Lopez says, in the end, every crime is going to be considered a crime that's vile that shocks the conscience. It's intended to single out the most horrendous types of crimes, not something that the attorney general says, well, this bothers me. You know, I'm sure that, you know, it's a long philosophical debate about what in common law was intended by a vile crime to separate it from the ordinary run-of-the-mill crime. So I don't think we're going to settle it here or maybe in the conference. But it's nothing new, this idea that there are some crimes that are vile, that are so horrendous, they're different from other crimes. The second category is anything involving financial crime. There, it's automatically covered. But other crimes that are non-financial are supposed to be the most vile crimes, as opposed to the general crime. The way you put this is not a different matter, but I don't think you intend to resolve the question of what was meant as common law by a vile crime as opposed to a regular crime. Your Honor, the critical point, though, is that in Marmoleo Campus, this Court unanimously ruled that Chevron principles apply. And that means that this Court recognized that it's, that the moral turpitude statute confers discretion upon the Attorney General to determine what is moral turpitudinous. And this Court must defer as long as it is reasonable. That doesn't mean that, Your Honor, excuse me, that doesn't mean that it is the, that it would be the best reading of the statute or the reading that this Court would come to in and of its own plenary review, as happened in Navarro-Lopez. But rather, is it a permissible construction? And in that regard, that there are. If that's so, I'm still having trouble why you're not anxious to agree with Judge Graber's question. But the best we can do is send this back. This particular case is not something I have to give any deference to. So I look for the cases upon which you want to give deference. And I've looked at those cases you've then said, and we've given you challenges about why those cases may even be appropriate, given our precedent. I'm still having a tough time understanding why, then, the right answer isn't, as Judge Graber has suggested to you, to send this back and have somebody analyze it based on the cases that may take away from what you say is the case that you want us to give deference to. If, regarding the question of what are the contours of California state law, this Court's review is de novo. If the Court concludes that GR is incorrect in some respects on what California law requires, then the appropriate thing to do under administrative law principles, as Judge Graber has suggested, is indeed to remand, to let the Board take another look at what California law requires. Well, even if we don't determine that it's incorrect, you're right that we look at California  law, but if we were to determine, and at this point I'm speaking only for myself, obviously, if we were to determine that California law has become more nuanced in its interpretation of its own statute, 245A1, than it was at the time that GR was decided, then why wouldn't we give the BIA the first opportunity to examine that developed law in light of its regular principles and explain where it comes out? Your Honor, ordinarily, the Court's review is on the basis of the agency-stated decisions. And here the agency relied on GR and it relied on its long-standing precedent that the assault using a deadly weapon is a crime involving moral turpitude, even under recklessness mens rea, as long as it's not non-accidental. Now, if the Court believes that that's not a crime involving moral turpitude, then the appropriate thing to do would be to send it back. I see that my time is up. May I take a moment to conclude? I think you have. Thank you. Thank you, Your Honor. You have a minute left. Mr. Acosta. Thank you, Your Honor. I wish I had more time. In the Board's decision, the Court found that it had long been settled. In 2008, when the Board made the decision, it found that it had long been settled that assault with a deadly weapon was categorically a crime involving moral turpitude. We obviously dispute that and there's case law that supports our argument that at the time that the Board considered a matter of GR, it did not consider what the implication would be if you had a negligent assault. And that was something that Board Member Wasserman highlights in his dissent, which was something that we mentioned in our reply brief. Even the Board Member in that case indicated that the majority was not considering the negligence aspect. When you look at a matter of CEJAS and SOLON, essentially what the Board is trying to tell everyone is that to find moral turpitude, if it's a lower mens rea of recklessness or negligence, there has to be an additional element, not conduct, element showing actual injury, actual infliction of injury. If the mens rea is specific intent, that's where you don't need to show the harm, which is something that this Court discusses in Latter Singh in the making criminal threats context. Because in those types of cases, there's a specific intent to convey an intent that you're going to commit a harm at that moment, that's why the absence of a harm doesn't meet. So I see I'm out of time. Thank you very much for this opportunity. Thank you. Thank you. CASE LAWS ARGUMENT STANDS SUBMITTED. We're adjourned.
judges: Kozinski, Reinhardt, Silverman, Graber, Gould, Paez, Clifton, Bea, Smith, Murguia, Hurwitz